UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

EUGENE E. JOHNSON,                )
                                  )
          Plaintiff,              )
                                  )
v.                                )    Civil Case No. 04-1609 (EGS)
                                  )
ANN M. VENEMAN, SECRETARY,        )
UNITED STATES DEPARTMENT OF       )
AGRICULTURE, et al.               )
                                  )
          Defendants.             )
_____)

### MEMORANDUM OPINION

*Pro se* plaintiff Eugene Johnson brings this complaint against the United States Department of Agriculture ("USDA") alleging discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") for alleged race, age and sex discrimination related to his employment with the Office of Budget and Program Analysis ("OBPA").  Defendant USDA now moves for dismissal or, in the alternative, summary judgment. Upon consideration of the motions, responses, and replies thereto, the record and the applicable law, the Court DENIES IN PART the USDA's motion with respect to ADEA claims alleged in plaintiff's Equal Employment Opportunity Commission ("EEOC") complaint, and GRANTS IN PART the USDA's motion with respect to the remaining ADEA and Title VII claims.  The Court also GRANTS the USDA's request to dismiss two individual defendants.

## I. Background

Plaintiff Eugene Johnson is an African-American male born in 1957.  Beginning in 1997, Johnson worked at the USDA in the OBPA as a Program Analyst.  Compl. ¶ 6, 8.  Johnson alleges that while he was working for the OBPA, he was denied training and tuition assistance for job-related coursework at the University of Maryland, despite the fact that white female employees received tuition assistance.  Compl. ¶ 10.  Johnson also alleges delays of weeks and months in receiving promotions for which he was eligible, including not receiving his last promotion from GS-12 to GS-13, despite the fact that he received a fully successful performance rating for the relevant rating period from October 1, 2001 to September 30, 2002.  Compl. ¶¶ 8, 21.  On September 23, 2002, Johnson filed an informal EEO complaint against the USDA in response to being denied the GS-13 promotion.  Compl. ¶ 22.

On February 12, 2003, Johnson filed a formal EEO complaint alleging Title VII and ADEA claims of race, age and sex discrimination.[1]  Compl. ¶ 3.  Johnson's EEO complaint, as amended on April 8, 2003, alleges discrimination relating to: (1) denials of training requests and tuition assistance for work-related courses; (2) denial of a promotion on September 23, 2002;

---

[1] Johnson was represented by counsel, Mr. Alderman, from February 13, 2003 (approximately) until November 25, 2003 in administrative actions in the EEOC and the Merit System Protection Board ("MSPB") as described below.  Johnson Opp'n, Unnumbered Ex. at 2 (letter from Alderman to Judith Hetherton, D.C. Bar Counsel); USDA Statement of Undisputed Facts, ¶ 7; USDA Mot., Ex. 5 (Johnson letter dismissing Alderman).  Since November 25, 2003, Johnson as been a *pro se* litigant.  *Id.*

2

(3) failure to promote him in a timely manner; and (4) failure to give him an outstanding rating on his October 17, 2002 performance appraisal.  USDA Mot., Statement of Undisputed Fact at 1.[2]

Johnson alleges that on April 7, 2003, he was put on a Performance Improvement Plan ("PIP") for 90 days as retaliation for his EEO complaint.  Compl. ¶ 22.  At the conclusion of the PIP, on July 11, 2003, he received a letter stating that his performance during the PIP was unacceptable and denying him a within-grade increase ("WGI") from GS-12, step 2 to GS-12, step 3.  Compl. ¶ 24.  Johnson requested reconsideration of the USDA's refusal to grant him the WGI, but his request was denied on August 12, 2003.  Compl. ¶¶ 25-26.  Johnson appealed that denial to the Merit System Protection Board ("MSPB") on September 5, 2003.  Compl. ¶ 26.

On November 12, 2003, at an MSPB appeal status hearing presided over by Judge Barbara Mintz, Johnson and the USDA entered into an agreement to settle the pending claims and all other claims Johnson may have had against the USDA.  USDA Mot., Ex. 2 at 3 (hearing transcript).  The hearing proceeded as entered as follows:

> JUDGE MINTZ:   […] Before we went on the record, the
> parties reached a settlement in this issue.   Mr.

---

[2] Johnson's pleadings do not themselves describe the content of the amended formal EEO complaint.

Alderman, do you want to list the basic parts of the settlement agreement as you understand them?  […]

[…]

MR. ALDERMAN:  We have:  That Mr. Johnson will be allowed to finish his detail, which is currently 120 days and expected to go through the middle of January;

That thereafter, Mr. Johnson will be placed on administrative leave for 60 days;

That Mr. Johnson's within grade increase denial will be reversed, and he will be placed at GS-12 step 3, retroactively to whenever the correct date was;

That Mr. Johnson's record will be cleared of the PIP and the below fully successful evaluation, so that the last evaluation will reflect that Mr. Johnson was at a fully successful level of performance.

At the end of the 60 day administrative leave period, Mr. Johnson will resign from his position. […]

And future employers will be referred to a neutral reference[…]

JUDGE MINTZ:  Mr. Johnson also agrees to withdraw all litigation he has or could have against the [USDA] arising out of his employment?

MR. ALDERMAN:  Correct, Your Honor.
[…]
And no attorneys' fees.
[…]

JUDGE MINTZ:  Is there anything else?

MR. RAMSEY [USDA Departmental Administration attorney]: No.

JUDGE MINTZ:  Okay.  I'm assuming you want this settlement agreement entered into the record for enforcement by the MSPB?

MR. ALDERMAN:  Yes, Your Honor.

MR. RAMSEY:  Yes.
[…]

4

JUDGE MINTZ:  Okay.  I don't know whether you're going to reduce this to writing.  There's no need to reduce the settlement agreement to writing.  It is on the record, and I have that, and it will be on tape.  But if you want to, you can send me a copy.  But I will be dismissing this case as soon as the Court Reporter gets me a copy of the tape.

MR. ALDERMAN:  To speak for the Appellant, we are perfectly content to have the settlement agreement be on the record.

JUDGE MINTZ:  Okay.

MR. RAMSEY:  What action will be taken to remove the EEOC claim?

MR. ALDERMAN:  We will dismiss the EEOC claim today.

MR. RAMSEY:  Okay.
[…]

USDA Mot., Ex. 2 at 3-7.

Later that day, Alderman sent notice to the EEOC that Johnson was voluntarily dismissing his EEO complaint with prejudice.  USDA Mot., Ex. 3.

On November 17, 2003, Judge Mintz issued an Initial Decision ("Initial Decision") dismissing the MSPB appeal of the August 12, 2003 WGI denial.  USDA Mot., Ex. 4.  The Initial Decision said that the settlement "appears to have been freely and voluntarily entered into by the parties," and included a section titled, in bold, "NOTICE TO APPLICANT."  USDA Mot., Ex. 4 at 1-3.  This section stated that the decision would become final on December 22, 2003, and listed instructions on how to file a petition for review of the Initial Decision to the MSPB "if you believe that

the settlement agreement is unlawful, was involuntary, or was the
result of fraud or mutual mistake." USDA Mot., Ex. 4 at 3. The
notice went on to state that the petition must be filed with the
Clerk of the Board no later than December 22, 2003, the date that
the Initial Decision would be made Final (or, if received more
than 5 days after issuance, 30 days from the date of receipt).[3]
USDA Mot., Ex. 4 at 3. The Initial Decision also stated
procedures for filing a review of the Final Decision with the
U.S. Court of Appeals for the Federal Circuit, including that the
petition may not be filed before the date the decision becomes
Final, that it must be received by that court no later than 60
days after the date it becomes Final, and that late filings must
be accompanied by a request for extension of time to file and a
statement and evidence showing good cause for the delay.[4] USDA
Mot., Ex. 4 at 4.

On November 25, 2003, Johnson sent a letter to David Fax of
the USDA under his EEO complaint caption, with the heading
"COMPLAINANT DOES NOT AGREE WITH NOTICE OF DISMISSAL." USDA Mot.
at 11; Ex. 5. In this letter, Johnson stated that the November
12 settlement agreement was read into the record "without my
agreement to settle," and that the letter was "to inform you that

---

[3] It is unclear when Johnson received the Initial Decision. The copy sent to
the USDA, also sent by U.S. Mail, is date stamped as received on November 26,
2003. USDA Mot., Ex. 4. The issue does not affect the Court's analysis.
[4] This letter contained a proof of service page listing only David Fax of the
USDA, but the USDA Statement of Undisputed Fact, ¶ 7, states that it was also
sent to the EEOC.

I Eugene Johnson, will continue to go forward with my EEO Complaint." USDA Mot., Ex. 5. Finally, Johnson stated that he had terminated the services of Mr. Alderman, his attorney through the proceedings and settlement, and listed plaintiff's own address for further correspondence. USDA Mot., Ex. 5.

Also on November 25, 2003, the EEO issued an order dismissing Johnson's complaint based on Alderman's November 12 notice of voluntary dismissal. USDA Mot., Ex. 6 at 1. This order also included instructions that the USDA must issue a Final Order within 40 days of the Agency's receipt of the decision, notifying Johnson whether the USDA will fully implement the decision, and that Johnson would then have 30 days after he received the Final Order to appeal it. USDA Mot., Ex. 6 at 3.

On December 11, 2003, David Fax of the USDA sent Johnson a letter and duplicate email: (1) confirming that the agency received Johnson's "November 25, 2003 notification that Mr. Leslie D. Alderman III no longer represents" Johnson; (2) confirming that the agency had completed its performance under the settlement by revising Johnson's performance appraisal to "Fully Successful," backdating the payment for his WGI as of July 14, 2003, and expunging all USDA personnel records of the performance issues, WGI denial, and EEO activity; and (3) requesting that Johnson complete his part of the agreement, including that he resign no later than March 16, 2004. USDA

7

Mot., Ex. 7.   Though Fax's communication responding to Johnson's
November 25, 2003 letter confirmed Alderman's dismissal, it made
no mention of Johnson's apparent protest of the settlement and
intention to proceed with his EEO complaint.   USDA Mot., Ex. 7.

Following Fax's letter, Johnson took the 60 days
administrative leave provided for in the settlement agreement,
and then ultimately resigned on March 15, 2004, though he stated
that he was "resigning under constructive discharge reasons."
Johnson Opp'n., Unnumbered Ex. (resignation letter from Johnson
to USDA).

On May 5, 2004, Johnson filed a motion for waiver of time
limit and a petition to vacate the settlement agreement.   USDA
Statement of Undisputed Fact ¶ 9.   On June 29, 2005, the MSPB
affirmed its decision to dismiss the case.   USDA Statement of
Undisputed Fact ¶ 9.

On September 17, 2004, Johnson filed his complaint in the
above-captioned case.   He alleged the Title VII and ADEA
discrimination claims related to age, race, sex and reprisal
described above, and requested a jury trial, declaratory
judgment, back pay and front pay, attorney's fees, and
compensatory and punitive damages of $6 million.   Compl. at 12.
Finally, Johnson alleged that after his resignation, the USDA
retaliated by attempting to prevent him from obtaining
unemployment compensation.   Compl. ¶ 62.

## II.  Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the plaintiff fails to "state a claim upon which relief can be granted."  Under Federal Rule of Civil Procedure 12(d), a motion to dismiss under Rule 12(b)(6) which attaches materials outside the pleadings will be treated as a motion for summary judgment.  Therefore, because the court has considered materials outside the pleadings offered by both parties, the proper standard of review is the same as for a motion for summary judgment.  Fed. R. Civ. P. 12(d).  *See* also Fed. R. Civ. P. 56(c).

### A. Motion for Summary Judgment under Fed. R. Civ. P. 56©

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In considering whether there is a triable issue of fact, the court

must draw all reasonable inferences in favor of the non-moving party. *Id.*

### B. *Pro Se* Litigants

The pleadings of *pro se* parties "[are] to be liberally construed, and the *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks and citations omitted).

## III. Discussion

### A. Waiver of Title VII Claims Arising Prior to the November 12, 2003 Settlement

The USDA argues that the Title VII claims that Johnson had or could have had at the time of the November 12, 2003 hearing settlement are barred by that agreement. USDA Mot. at 6. A settlement agreement concerning Title VII claims is sufficient to bar subsequent litigation of those claims. *See*, *e.g.*, *Maceda v. Billington*, 2003 U.S. Dist. LEXIS 19263, No. 01-0461, at *6-7 (D.D.C. Jan. 17, 2003) (granting summary judgment for defendant Library of Congress based on prior settlement of employee's Title VII claims); *Anzueto v. WMATA*, No. 89-0522, 1992 WL 613240, at *1 (D.D.C. June 8, 1992) ("*Anzueto I*") (same, except in favor of public transportation defendant) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974)). A Title VII waiver must be "knowing and voluntary," which means that it is "executed

freely, without deception or coercion with a full understanding of [what] rights [are being waived]." *United States v. Trucking Employers, Inc.*, 561 F.2d 313, 318 (D.C. Cir. 1977).

The USDA argues that the November 12 settlement satisfied the "knowing and voluntary" waiver requirement because, in sum: (1) Johnson did not object to the agreement at the hearing; (2) Johnson's own counsel was authorized to speak for Johnson and agreed to the waiver; (3) the settlement was presided over and approved by a judge; (4) the judge in her Initial Decision concluded that the waiver was entered into voluntarily and both parties understood the terms; and finally (5) Johnson did not contest the waiver after a reasonable period of time, 35 days from the date of the Initial Decision.  USDA Mot. at 8-10; USDA Reply at 4.  Johnson argues that he did not enter the agreement voluntarily or knowingly, and that he protested the settlement by letter and termination of his attorney as soon as he "learned the terms of the agreement."  Johnson Opp'n at 2.

The USDA provides sufficient evidence to show that the settlement agreement was "knowingly and voluntarily" entered into, since Johnson agreed to the settlement through his attorney, did not personally object to the settlement despite being present, and the administrative judge stated she had "determined the parties understood the terms of the agreement." USDA Mot., Ex. 4 at 1.  Further, Johnson ultimately accepted the

benefit of the USDA's concessions and performed his own duties under the letter of the agreement.  Johnson Opp'n at 10.   Though Johnson argues that he did not authorize his attorney to settle and the settlement was involuntary, his conduct during the settlement conference contradicts this argument.[5]  Johnson Opp'n at 2, 10.  Accordingly, the Title VII claims which were the subject of the November 12, 2003 settlement are barred.

## B. Waiver of the ADEA Claims Arising Prior to the November 12, 2003 Settlement

In contrast to Title VII waiver requirements, the Older Workers Benefits Protection Act ("OWBPA," a 1990 amendment to the ADEA) established a more stringent regime for reviewing whether ADEA waivers are "knowing and voluntary."  *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-28 (1998).  The higher waiver requirements given by the OWBPA apply to Johnson's alleged November 12, 2003 waiver of his ADEA claims.

Because Johnson's claim involves a settlement of an EEO claim, and alleges discrimination of a kind prohibited under 29 U.S.C. § 623 or 633(a), the requirements for knowing and voluntary waiver are governed by 29 U.S.C. § 626(f)(2).  In sum, the requirements for "knowing and voluntary" waiver of an

---

[5] *cf. Makins v. District of Columbia*, 277 F.3d 544, 553 (D.C. Cir. 2002) (certifying question to D.C. Court of Appeals whether an attorney-negotiated oral settlement agreed to before a magistrate judge is binding though the absent client did not authorize attorney to settle) (question answered by *Makins v. District of Columbia*, 838 A.2d 300, 301 (D.C. 2003) (holding that such a client is not bound by the agreement)).  The facts of this case differ: Johnson was present during the hearing, and did not object while his attorney accepted the agreement on the record.  USDA Mot., Ex. 2 at 3, 6.

individual claimant's EEO ADEA age discrimination claim are, "at a minimum": (1) the waiver is "written in a manner calculated to be understood by" the party waiving; (2) the waiver refers specifically to rights or claims arising under the ADEA; (3) the waiving party does not waive rights arising after the date of waiver; (4) the waiver is exchanged for consideration to which the waiving party would not otherwise be entitled; (5) the waiving party is advised in writing to consult an attorney prior to executing the waiver; and (6) the waiving party is given a "reasonable period of time" to consider the agreement.  29 U.S.C. § 626(f)(2) (2008) (incorporating 29 U.S.C. § 626(f)(1)(A)-(E) by reference).  This is a "strict, unqualified statutory structure," and courts are "bound to take Congress at its word" in its interpretation.  *Oubre*, 522 U.S. at 427.

The USDA largely does not address the elements of OWBPA's higher "knowing and voluntary" waiver requirements, but instead relies on its general arguments for the Title VII "knowing and voluntary" waiver outlined above.  USDA Mot. at 8-10.  The USDA makes two arguments that address the OWBPA, however.  First, that the OWBPA's implicit requirements for a written document were met by the transcription of the hearing.  USDA Mot. at 9.  Second, that even if the OWBPA applies, the higher OWBPA waiver requirements apply only to the ADEA claims, and the Title VII claims are still barred by the settlement agreement waiver.  USDA

Reply at 3 fn.3; *Caplin v. Nations Credit Corp.*, 307 F.3d 368
(5th Cir. 2002).   Johnson argues that he was never "advised of
his rights under the ADEA and OWBPA" and neither signed nor would
have signed a waiver of his rights that would result in a
voluntary resignation.   Johnson Opp'n at 10.

The USDA is correct that the OWBPA does not heighten the
"knowing and voluntary" waiver requirements for claims other than
ADEA claims.   Under 29 U.S.C. 626(f)(1), the scope of waiver is
specifically limited to rights or claims "under this Act." *See
also* 29 U.S.C. § 621(b) (2008) (confirming that "Act" refers to
age discrimination claims).   Johnson is correct, however, that
his claims regarding age discrimination brought under the ADEA
must be analyzed under the OWBPA standard.   *See Oubre,* 522 U.S.
at 426-28.

The District Court has addressed the OWBPA requirements for
knowing and voluntary waiver of ADEA claims.   In *Anzueto v.
Washington Metropolitan Area Transit Authority* ("*Anzueto II*"), a
Hispanic Washington Metropolitan Area Transit Authority ("WMATA")
employee brought Title VII and ADEA discrimination claims against
WMATA.   357 F. Supp. 2d 27, 28 (D.D.C. 2004).   During litigation,
Anzueto signed a waiver agreement of any potential claims against
WMATA in exchange for enrollment in a new retirement program.
*Id.* at 29.   WMATA moved for dismissal based on the agreement and
argued that the release met the OWBPA requirements for knowing

and voluntary waiver.  *Id.*  The court held that, though the OWBPA established a separate and "strict statutory structure for evaluating releases and waivers" of ADEA claims, the signed release met the OWBPA requirements because it, in relevant part: (1) used plain, unambiguous language; (2) advised Anzueto in multiple places in bold capital letters to consult an attorney; (3) specifically referenced the ADEA and age discrimination claims; and (4) gave Anzueto 45 days to execute the waiver and 7 days to revoke after execution. *Id.* at 32.

The waiver here differs from the waiver in *Anzueto II* because the November 12, 2003 settlement transcript makes no specific reference to waiving ADEA claims.  USDA Mot., Ex. 3. The waiver thereby violates the OWBPA, which in part requires any waiver of ADEA-covered claims to specifically reference the ADEA.[6]  29 U.S.C. § 626(f)(1)(B) (incorporated into § 626(f)(2)(A) by reference); *Anzueto II*, 357 F. Supp. 2d at 32. Accordingly, Johnson did not waive his ADEA claims at the November 12, 2003 settlement hearing.

---

[6] The Court also notes that the waiver was made orally at the November 12, 2003 hearing, and the MPSB's transcript is merely a recordation of the already-made oral agreement.  Thus, other OWBPA requirements, such as the requirement that the waiving party be advised in writing to consult an attorney *prior* to the execution of the agreement, may be insufficient.  29 U.S.C. § 626(f)(1)(E). Further, the waiver included no revocation period, but rather only left Johnson with the right to appeal under limited circumstances.  USDA Mot, Ex. 4 at 3.  These facts, however, are not necessary to the court's resolution of the issues.

C. **Exhaustion of the ADEA Claims Arising Prior to the November 12, 2003 Settlement**

Though the ADEA claims survive the waiver analysis, the USDA separately argues that the ADEA claims existing at the time of the November 12, 2003 settlement are barred due to failure to exhaust.  USDA Mot. at 10-12.  As a general rule, parties "must exhaust prescribed administrative remedies before seeking relief from federal courts."  *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992).  Thus, a party must timely pursue all applicable administrative remedies before bringing discrimination claims to federal court.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing *Brown v. GSA,* 425 U.S. 820, 832-33 (1976)).  The defendant bears the burden of pleading and proving the untimely exhaustion of administrative remedies because it is an affirmative defense.  *Id.*  After a showing of failure to exhaust, the plaintiff may plead facts that support an equitable exception to the timeliness rule.  *Id.*

1. **Appeal of MSPB Initial and Final Decisions**

A timely petition for review of an MSPB Initial Decision must be made to the clerk of the MSPB within 35 days of issuance, or within 30 days if received by the petitioner more than 5 days from the date of issuance.  5 C.F.R. § 1201.114(d) (2008). Extension of time to file a petition for review requires a showing of good cause.  *Id.* at § 1201.114(e).  After the Initial

Decision becomes final, a petitioner may appeal that Final Decision to the U.S. Court of Appeals for the Federal Circuit within 60 days of the date it becomes final.  5 U.S.C.S. § 7703(b)(1) (2008).  The USDA argues that Johnson failed to exhaust his administrative remedies following the November 17, 2003 MSPB Initial Decision because he did not file a petition for review until May 5, 2004, failing by four months to meet the December 22, 2003 deadline.  USDA Mot. at 11.  Johnson does not respond to the USDA's arguments.

The USDA has met its burden of showing failure to exhaust the MSPB settlement's administrative remedies.  Johnson failed to timely appeal the Initial and Final Decisions of the MSPB, and has not offered good cause for his belated appeal.  *See* 5 C.F.R. § 1201.114(e).  Accordingly, pre-November 12 ADEA claims exclusively related to the MSPB settlement are unexhausted, and thus not properly before the Court.

### 2.  Appeal of EEOC Dismissal

A timely appeal of a dismissed EEO complaint must be made to the Office of Federal Operations within 30 days after the agency issues a Final Order implementing the decision.  29 C.F.R. § 1614.402(a) (2008).  The Final Order must meet a number of criteria, including that it be issued by the agency forty (40) days from the issuance of the dismissal, state the agency's intention to implement the administrative judge's decision and

17

attach a copy of EEOC Form 573.   29 C.F.R. § 1614.110(a) (2008).
By the text of the EEOC dismissal in this case, if the agency
does not issue a final order, the petitioner may appeal to the
Office of Federal Operations "any time after the conclusion of
the agency's (40) day period for issuing a final order."   Johnson
Opp'n., Unnumbered Ex. at 3 (EEOC dismissal order dated Nov. 25,
2003); EEOC Management Directive 110, 9-3.   The EEOC also allows
filing of a complaint in U.S. District Court if no final action
has been taken within 180 days of filing of the original
complaint.   29 CFR § 1614.407(b).

The USDA argues that Johnson failed to exhaust the EEOC
administrative remedies because Johnson "does not allege that he
filed an appeal" of the EEOC dismissal order.   USDA Statement of
Undisputed Fact ¶ 7.   Johnson asserts he properly filed the
action before the Court because the EEOC took no final action
within 180 days after he filed his complaint.   Johnson Opp'n at
3,7.   Johnson supports this with a "right to sue" letter, dated
July 22, 2004, from the EEOC complaints division.   Johnson
Opp'n., Unnumbered Ex. (letter from Hickey to Johnson dated July
22, 2004).

There is no evidence presently before the Court that the
USDA issued a timely Final Order in compliance with the

requirements of the EEOC dismissal and 29 C.F.R. § 1614.110(a).[7]

Ms. Hickey's letter creates at least a genuine issue of material

fact by suggesting that the USDA did not issue a final order, and

that Johnson did exhaust his administrative remedies sufficient

to bring the present action.  Accordingly, the USDA has not shown

that Johnson's pre-November 12, 2003 ADEA EEOC claims are

unexhausted.  The USDA has not met its burden to establish that

there is no genuine issue of material fact regarding failure to

exhaust, and the USDA is not entitled to summary judgment.

Consequently, the Court denies defendant's motion to dismiss any

ADEA claims alleged in Johnson's EEOC complaint.

### D. Exhaustion of Title VII and ADEA Claims Arising Subsequent to the November 12, 2003 Settlement

Johnson alleges that after the November 12, 2003 agreement,

the USDA retaliated against him by refusing or opposing payment

of unemployment benefits.  Compl. ¶ 62.  The USDA argues that

Johnson has failed to show he has exhausted his administrative

remedies regarding the alleged retaliation, and this compels the

Court to dismiss.  USDA Reply at 5.  The USDA relies on the

Declaration of Sadhna G. True, Director of Adjudication and

Compliance for the USDA to show failure to exhaust.  Ms. True

---

[7] Note that the email from David Fax of the USDA to Johnson, dated December 11, 2003, outlines the parties' respective duties under the agreement and the USDA's intention to comply.  USDA Mot., Ex. 7.  However, it fails to satisfy numerous requirements of a Final Order as given in the EEOC dismissal order. USDA Mot., Ex. 7.  Among other omissions, it fails to reference a right to appeal to the Office of Federal Operations and a right to file a civil action, and does not attach a copy of EEOC Form 573.  USDA Mot., Ex. 6 at 3.  As a result, the letter does not suffice as a Final Order.

declares that the USDA has no record of any EEO complaints filed
after November 12, 2003.  Sadhna Decl. ¶ 3.  Johnson does not
argue the issue in his opposition.

The USDA's declaration shows that no EEOC complaint related
to alleged discrimination occurring after November 12, 2003 has
been filed.  Because there is no record that any new complaints
have been filed, and because Johnson fails to address this issue
in his opposition, the USDA has met its burden of showing failure
to exhaust.  Accordingly, the Court grants USDA's motion to
dismiss Johnson's claim of unemployment benefit retaliation which
arose after the November 12, 2003 settlement.

## IV.  Dismissal of Defendants Other than the Head of the USDA

The USDA argues that two defendants who are not the head of
the USDA should be dismissed.  The proper defendant in a civil
employment discrimination action is "the head of the department,
agency, or unit, as appropriate."  42 U.S.C. § 2000e-16(c).  *See
also*, *e.g.*, *Hackley v. Roudebush*, 520 F.2d 108, 115 n. 17 (D.C.
Cir. 1975); *Nichols v. Truscott*, 424 F. Supp. 2d 124, 131 fn. 8
(D.D.C. 2006).  Although employees may be sued for actions taken
outside of their official capacities, a suit against an
individual in her [or his] official capacity "is one method of
bringing suit against the employer and is distinct from an
individual capacity suit."  *Jenkins v. Jackson*, 538 F. Supp. 2d
31, 33 (D.D.C. 2008) (citing *Cooke-Seals v. District of Columbia,*

973 F. Supp. 184, 187 (D.D.C. 1997)).  Accordingly, naming defendants other than the agency head is "redundant and an inefficient use of judicial resources."  *Jenkins,* 538 F. Supp. 2d at 34.

Johnson's complaint clearly makes allegations against these defendants concerning acts done in their official capacity. Compl. ¶¶ 42-43.  Accordingly, the Court GRANTS the USDA's request to dismiss the individually-named defendants, Geraldine Broadway and Jacquelyn Chandler.

## V. Conclusion

For the reasons above, the USDA's Motion for Summary Judgment is **DENIED IN PART** with respect to ADEA claims alleged in his EEOC complaint, and **GRANTED IN PART** with respect to the remaining ADEA and Title VII claims.  The Court also **GRANTS** the USDA's request to dismiss the two allegedly improperly named defendants.


        **Signed:    Emmet G. Sullivan**
        **            United States District Judge**
        **            August 6, 2008**

21