**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

========================================
                               )
EUGENE E. JOHNSON,          )
                               )
         Plaintiff,    )
                               )   Civil Action No. 04-1609 (EGS)
      v.             )
                               )
TOM VILSACK, SECRETARY,  )
UNITED STATES DEPARTMENT OF  )
AGRICULTURE, *et al.*,    )
                               )
         Defendants.   )
                               )
_____

**MEMORANDUM OPINION**

Plaintiff Eugene Johnson brings this action against the Secretary[1] of the United States Department of Agriculture ("USDA"), alleging discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, based on alleged race, age and sex discrimination related to his employment with the Office of Budget and Program Analysis ("OBPA"). This Court previously dismissed plaintiff's Title VII claims and several of his ADEA claims. *See Johnson v. Veneman*, 569 F. Supp. 2d 148 (D.D.C. 2008) (hereinafter, *Johnson I*). Plaintiff's surviving claims for discrimination under the ADEA

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Tom Vilsack is substituted for the former Secretary of the United States Department of Agriculture as the named defendant in this case.

relate to the following four actions by the USDA: (1) the failure to grant plaintiff's career-ladder promotion to GS-13 on September 23, 2002; (2) the failure to grant prior promotions in a timely manner from 1998 through 2001; (3) the denial of requests for training since 1997; and (4) plaintiff's rating of less than "Outstanding" on his performance evaluation dated October 17, 2002.  Pending before the Court is defendant's motion for summary judgment, in which defendant argues that plaintiff failed to exhaust his administrative remedies and that his claims fail on the merits.  Upon consideration of the motion, the opposition and the reply thereto, the applicable law, the entire record, and for the reasons stated below, defendant's motion for summary judgment is hereby **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Eugene Johnson is an African-American male born in 1957.  Compl. ¶ 6.  In November 1997, Johnson began working for the USDA as a GS-7 Program Analyst on the Legislative and Regulatory Staff of OBPA.  *Id.* ¶ 8; *see also* Def.'s Statement of Material Facts as to Which There is No Genuine Dispute ¶ 1 (hereinafter, "Def.'s SMF").  Johnson alleges that while he was working for OBPA, he was denied training and tuition assistance for job-related coursework at the University of Maryland, despite the fact that white female employees received tuition

assistance.  Compl. ¶¶ 10, 28.[2]  Johnson also alleges delays of weeks and months in receiving promotions for which he was eligible.  *See id.* ¶ 8.  In particular, Johnson alleges that he was eligible for promotion to the GS-9 level on November 24, 1998, but he was not promoted until December 6, 1998; that he was eligible for promotion to the GS-11 level on December 6, 1999, but he was not promoted until February 13, 2000; and that he was eligible for promotion to the GS-12 level on February 13, 2001, but he was not promoted until July 15, 2001.  *Id.* Finally, Johnson alleges that he was eligible for promotion to the GS-13 level on July 15, 2002, but he never received that promotion, despite the fact that he received a "Fully Successful" performance rating for the relevant rating period from October 1, 2001 to September 30, 2002.  *Id.* ¶¶ 8, 21.

On September 23, 2002, Johnson filed an informal Equal Employment Opportunity ("EEO") complaint against the USDA in response to the denial of the GS-13 promotion.  *Id.* ¶ 22.  On February 12, 2003, Johnson filed a formal EEO complaint alleging claims of race, age and sex discrimination under Title VII and

---

[2] Plaintiff's complaint states that he "applied for tuition assistance to complete course work in Information Systems in 1996, at the University of Maryland."  Compl. ¶ 10.  However, the pleadings filed by both plaintiff and defendant state that plaintiff began working at OBPA in 1997.  *See* Pl.'s Statement of Material Disputed Facts ¶ 1 (hereinafter, "Pl.'s SMF"); Def.'s SMF ¶ 1.  The Court therefore treats this allegation as a denial of tuition assistance to complete coursework and training sometime after 1997.

the ADEA.  *Id.* ¶ 3; *see also* Administrative Record ("AR") 25.

Johnson's formal EEO complaint, as amended on April 8, 2003,

alleges discrimination relating to: (1) the failure to grant

Johnson's career-ladder promotion to GS-13 on September 23,

2002; (2) the failure to grant prior promotions in a timely

manner; (3) the denials of training requests and tuition

assistance for work-related courses; and (4) the failure to give

him an "Outstanding" rating on his October 17, 2002 performance

appraisal.  *See* AR 25-30.[3]

Johnson alleges that on April 7, 2003, he was put on a

Performance Improvement Plan ("PIP").  Compl. ¶ 22.  At the

conclusion of the PIP, on July 11, 2003, he received a letter

stating that his performance during the PIP was unacceptable and

denying him a within-grade increase from GS-12, step 2 to GS-12,

step 3.  *Id.* ¶ 24.  Johnson requested reconsideration of the

USDA's refusal to grant him the within-grade increase, but his

request was denied on August 12, 2003.  *Id.* ¶ 25.  Johnson

appealed that denial to the Merit System Protection Board

("MSPB") on September 5, 2003.  *Id.* ¶ 26.

On November 12, 2003, at an MSPB appeal status hearing,

Johnson and the USDA entered into an agreement to settle the

pending claims and all other claims Johnson may have had against

---

[3] Plaintiff's pleadings do not themselves describe the
content of the amended formal EEO complaint.

the USDA.  *See Johnson I*, 569 F. Supp. 2d at 151-52.  On

November 17, 2003, the judge who presided over the MSPB appeal

status hearing issued an Initial Decision dismissing Johnson's

MSPB appeal based on the settlement.  *Id.* at 152.  The Initial

Decision included a section titled, "NOTICE TO APPLICANT," which

stated that the decision would become final on December 22, 2003

and included information on filing a petition for review.  *Id.*

at 152-53.  On November 25, 2003, Johnson sent a letter to the

USDA under his EEO complaint caption, in which he stated that he

had not agreed to settle the case, and that the letter was "to

inform you that I Eugene Johnson, will continue to go forward

with my EEO Complaint."  *Id.* at 153.  Johnson subsequently took

the 60 days' administrative leave provided for in the settlement

agreement and then resigned on March 15, 2004, though he states

that he was "forced to terminate his employment."  Pl.'s SMF

¶ 13; *see also Johnson I*, 569 F. Supp. 2d at 153.

On September 17, 2004, plaintiff filed his complaint in the

above-captioned case.  On August 6, 2008, this Court granted in

part and denied in part defendant's motion to dismiss or, in the

alternative, for summary judgment.  *See Johnson* I, 569 F. Supp.

2d at 159.  In particular, this Court denied defendant's motion

with respect to the ADEA claims alleged in plaintiff's EEO

complaint, and granted defendant's motion with respect to (1)

plaintiff's Title VII claims, which had been waived in the MSPB

settlement; (2) plaintiff's remaining ADEA claims, which he failed to exhaust via the MSPB's appeal process; and (3) plaintiff's claim of retaliation.  *See id.* at 155-59.  The Court also dismissed the two individually-named defendants, Geraldine Broadway and Jacquelyn Chandler, leaving as the sole defendant the Secretary of the USDA in his official capacity.  *Id.* at 159. On March 26, 2010, the Court denied plaintiff's motion for reconsideration, finding it "a rehash of the arguments previously argued and rejected by the Court."  Defendant filed its motion for summary judgment on August 13, 2010.  The motion is now ripe for determination by the Court.

## II.  STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden of

6

demonstrating the absence of genuine issues of material fact.
*See Celotex*, 477 U.S. at 325.   In determining whether a genuine
issue of material facts exists, the Court must view all facts in
the light most favorable to the non-moving party.   *See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
587 (1986); *Keyes v. District of Columbia*, 372 F.3d 434, 436
(D.C. Cir. 2004).

The non-moving party's opposition, however, must consist of
more than mere unsupported allegations or denials; rather, it
must be supported by affidavits or other competent evidence
setting forth specific facts showing that there is a genuine
issue for trial.   *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477
U.S. at 324.   If the non-movant's evidence is "merely colorable"
or "not significantly probative," summary judgment may be
granted.   *Anderson*, 477 U.S. at 249—50.   "The mere existence of
a scintilla of evidence in support of the [non-movant]'s
position will be insufficient; there must be evidence on which
the jury could reasonably find for the [non-movant]."   *Id*. at
252.

## III. ANALYSIS

Plaintiff's surviving claims arise under the ADEA, which
provides that "[a]ll personnel actions affecting employees or
applicants for employment who are at least 40 years of age . . .
in executive agencies . . . shall be made free from any

discrimination based on age." 29 U.S.C. § 633a(a).  Defendant

makes two arguments in support of its motion for summary

judgment.  First, defendant argues that, on three of plaintiff's

four claims, plaintiff failed to exhaust his administrative

remedies under 29 U.S.C. § 633a.  Second, defendant argues that,

on all four claims, plaintiff has failed to rebut defendant's

proffered legitimate, non-discriminatory explanation for its

actions.  The Court analyzes these arguments in turn.

### A.   Failure to Exhaust Administrative Remedies

Defendant argues that plaintiff failed to exhaust his

administrative remedies on three of his four claims: (1) the

alleged failure to grant plaintiff's career-ladder promotion to

GS-13 on September 23, 2002; (2) the alleged failure to grant

prior promotions from 1998 through 2001 in a timely manner; and

(3) the alleged denial of plaintiff's requests for training

since 1997.[4]  In his opposition, Johnson contends that all of his

claims were timely presented to the EEOC.  *See generally* Pl.'s

Opp.  Johnson invokes the Lilly Ledbetter Fair Pay Act in

support of his arguments.

---

[4] The parties do not dispute that plaintiff exhausted his
administrative remedies with respect to the claim that the
defendant discriminated against him when it rated him less than
"Outstanding" in his performance evaluation dated October 17,
2002.

### 1.   Legal Standard for Exhaustion Under the ADEA

Under the ADEA, a federal government employee has two alternative avenues to judicial redress. *See Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003). "First, the employee may bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act, he provides the EEOC with notice of his intent to sue at least 30 days before commencing suit." *Id.* (citing 29 U.S.C. §§ 633a(c), (d)); *see also Stevens v. Dep't of Treasury*, 500 U.S. 1, 5-7 (1991). "Second, the employee may invoke the EEOC's administrative process, and then sue if dissatisfied with the results." *Rann*, 346 F.3d at 194 (citing 29 U.S.C. §§ 633a(b), (c)). Failure to adhere to at least one of these alternatives will bar claims in the district court. *See Rann*, 346 F.3d at 195. It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Johnson v. Ashcroft*, 445 F. Supp. 2d 45, 51 (D.D.C. 2006).

If the employee elects to follow the EEO administrative process, the procedures governing discrimination complaints brought by employees of the federal government under the ADEA are set forth in 29 C.F.R. Part 1614 (Federal Sector Employment Opportunity). *See* 29 C.F.R. § 1614.103; *see also More v. Snow*, 480 F. Supp. 2d 257, 269 (D.D.C. 2007). An employee may not file a formal discrimination complaint without first

"consult[ing] [an EEO] Counselor . . . in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). This initial contact must be made "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

If the matter is not resolved informally within 30 days of the initial contact, the counselor shall inform the employee in writing of the right to sue, and the employee must, within 15 days, file a formal complaint of age discrimination against the agency. 29 C.F.R. § 1614.105(d); *id.* § 1614.106(a)-(c). The agency is then obligated to investigate the matter within 180 days. *See* 29 C.F.R. §§ 1614.108(e). After the agency's investigation has concluded, the employee may either request a hearing and decision from an EEOC administrative judge, or seek to obtain an immediate final decision from the agency. *See* 29 C.F.R. § 1614.108(f); *see also More*, 480 F. Supp. 2d at 270. Any decision on the matter may be appealed to the EEOC, or challenged through the filing of a civil action in federal district court within 90 days. *See* 29 C.F.R. § 1614.402; *id.* § 1614.407(a); *see also More*, 480 F. Supp. 2d at 270; 42 U.S.C. § 2000e-16(c) (setting forth ninety-day time limit for filing suit in Title VII cases); *Price v. Bernanke*, 470 F.3d 384, 389 (D.C. Cir. 2006) (applying Title VII's ninety-day limitations

period to ADEA claims).  An employee also may file a civil

action at any time after a complaint has been pending before the

agency or the EEOC for at least 180 days.  29 C.F.R. §

1614.407(b), (d); *see also* 42 U.S.C. § 2000e-16(c).

The D.C. Circuit has held that the timeliness and

exhaustion requirements of Section 633a(d) are non-

jurisdictional.[5]  *See Rann*, 346 F.3d at 194-95; *Kennedy v.*

*Whitehurst*, 690 F.2d 951, 961 (D.C. Cir. 1982); *see also*

*Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519,

527 (D.C. Cir. 2010); *cf. Colbert v. Potter*, 471 F.3d 158, 167

(D.C. Cir. 2006) ("The filing time limit imposed by Title VII,

42 U.S.C. § 2000e-16(c), is not a jurisdictional requirement but

rather is similar to a statute of limitations." (internal

citation and quotation marks omitted)); *Hansen v. Billington*,

644 F. Supp. 2d 97, 102 (D.D.C. 2009).

### 2.  Lilly Ledbetter Fair Pay Act

The Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-

2, 123 Stat. 5 (2009) ("LLA"), as incorporated into the ADEA,

states, in relevant part, that "an unlawful practice occurs,

with respect to discrimination in compensation in violation of

[the ADEA], when a discriminatory compensation decision or other

practice is adopted, when a person becomes subject to a

---

[5] Johnson has raised no equitable defenses to the exhaustion
requirements.

discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation or other practice." 29 U.S.C. § 626(d)(3). The LLA was enacted in response to the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), which held that later effects of past discrimination in compensation decisions, such as reduced paychecks, do not restart the clock for filing an EEO charge beyond the statutory time period. *See id.* at 642-43. The LLA nullified the *Ledbetter* decision, and now, under the LLA, "each paycheck resulting from the original 'discriminatory compensation decision or other practice' triggers a new filing period, in effect reviving a claim that otherwise would have been time-barred because of a failure to exhaust administrative remedies . . . ." *Johnson v. District of Columbia*, 632 F. Supp. 2d 20, 22 (D.D.C. 2009).

As the D.C. Circuit has held, a decision not to promote an employee is not a "discriminatory compensation decision or other practice" under the LLA. *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010); *see also Lipscomb v. Mabus*, 699 F. Supp. 2d 171, 174 (D.D.C. 2010) (holding that employer's denial of two career ladder promotions on the GS scale was not a "discriminatory compensation decision or other practice," and hence, the LLA did not render timely the

plaintiff's allegations of discrimination); *Barnabas v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 686 F. Supp. 2d 95, 102 (D.D.C. 2010).

### 3.   Application to Plaintiff's Claims

With respect to the first route for exhaustion, defendant argues that Johnson "has presented no evidence that he ever sent the EEOC notice of his intent to sue." Def.'s Mem. 8.   In response, Johnson states that he "provided notice to the EEOC of his intent to proceed on November 25, 2003." Pl.'s SMF ¶ 12. Even assuming, *arguendo*, that Johnson's letter to the USDA on November 25, 2003 constitutes sufficient notice of intent to sue under 29 U.S.C. § 633a, Johnson still did not exhaust his administrative remedies, as the letter was not sent within 180 days of any of the challenged actions.[6]   The last alleged discriminatory action Johnson complains of is the failure to rate him "Outstanding" on his performance evaluation dated October 17, 2002, more than one year before Johnson sent his notice of intent to sue to the USDA.   Therefore, in order to have exhausted his administrative remedies, Johnson must have undertaken the second route discussed above, the EEO administrative process.   Thus, Johnson must have consulted an

---

[6] As the Supreme Court has recognized, a plaintiff is required to exhaust all administrative remedies for each "discrete" incident of discrimination that rises to the level of an unlawful employment practice.  *See AMTRAK v. Morgan*, 536 U.S. 101, 110-13 (2002); *see also More*, 480 F. Supp. 2d at 270-71.

EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).

On two of Johnson's claims, the failure to grant timely promotions from 1998 through 2001, and the denial of training requests, Johnson clearly did not exhaust his administrative remedies.  In particular, Johnson claims that he was eligible for promotions on November 24, 1998, December 6, 1999, and February 13, 2001.  Compl. ¶ 8.  Because Johnson's initial contact with an EEO counselor was on September 23, 2002 (*see* AR 34), more than a year after the last alleged failure to timely promote, Johnson failed to exhaust his remedies with respect to the claim for failure to grant timely promotions from 1998 through 2001.[7]  In any event, there is no suggestion that Johnson

_____

[7] The LLA does not revive any of plaintiff's claims of discrimination based on the failure to grant plaintiff timely promotions as soon as he was eligible for them.  Plaintiff argues, "[i]n Mr. Johnson's employment with the USDA, the promotions were not the type of promotions distinguished by *Schuler* (specific employment actions) to entirely new positions but rather were grade changes within the same position (similar to salary increases)."  Pl.'s Opp. 3.  However, as defendant points out, this Court recently addressed such an argument in *Lipscomb*, a case in which the Court held that a failure to grant plaintiff a promotion on the GS scale was not a "compensation decision or other practice" within the meaning of the LLA.  *See* 699 F. Supp. 2d at 174.  As the Court stated, "[t]hat *Schuler* involved a competitive promotion, while at least some of [plaintiff's] allegations concern noncompetitive 'career ladder' promotions, is of no moment. The D.C. Circuit was clear: 'the

14

was not aware of the untimely promotions, nor has he argued that the exhaustion requirements should be waived, estopped, or equitably tolled.

In addition, with respect to his claims related to the denial of training requests, Johnson alleges that the defendant denied him tuition assistance to complete coursework in Information Systems at the University of Maryland, despite providing tuition assistance to other employees not in Johnson's protected class.  *See* Compl. ¶¶ 10, 28.   Johnson does not

---

decision whether to promote an employee to a higher paying position is not a "compensation decision or other practice" within the meaning of that phrase in the' Lilly Ledbetter Act. The extent to which an employee is in competition to obtain a position is therefore irrelevant to the question whether the Lilly Ledbetter Act covers the employer's decision not to promote him." *Id*. at 174 n.5 (citing *Schuler*, 595 F.3d at 375). The LLA's legislative history similarly distinguishes those claims that are readily identifiable at the time of the alleged discrimination from those that are hidden in a personnel action or practice.  As the House Committee on Education and Labor explained, "[u]nlike . . . promotion . . . decisions where an individual immediately knows that she has suffered an adverse employment action, there is often no clearly adverse employment event that occurs with a discriminatory pay decision." H.R. Rep. No. 110-237, at 7 (2007).  Plaintiff has provided no response to these authorities, and in fact, he points to no authority for the proposition that the LLA should apply here. The failure to grant a timely promotion is an action of which Johnson would have been aware (indeed, he does not deny that he was well aware of each delay at the time it occurred).  In addition, Johnson would have been immediately aware that he had suffered an adverse employment action, as presumably he did not receive a higher salary, with commensurate benefits, during the pendency of that delay.  Under the facts here, the Court finds that the failure to grant Johnson's promotions in a timely manner, like the failure to promote to a higher GS level, is not revived under the LLA.

provide evidence of the dates on which defendant allegedly denied any requests for training or tuition assistance.  The record reflects a request from Johnson for Information Systems training on approximately June 30, 1999.  *See* AR 446-47.  The record also reflects that this request was *granted* on August 11, 1999.[8]  *See* AR 439.  In his rebuttal affidavit provided during the USDA's EEO investigation, Johnson admitted that all of his training requests had been granted, except for one request on or about August 2000 for a course on "Systems Analysis and Design." *See* AR 83-84.  Even assuming, however, that Johnson could sufficiently demonstrate a denial of a training request during this time period, plaintiff failed to contact an EEO Counselor within 45 days of these denials.  Johnson's first contact with an EEO counselor, on September 23, 2002, occurred at least two years later.  *See* AR 34.  Therefore, plaintiff failed to exhaust his administrative remedies with respect to his allegations

---

[8] In fact, the record demonstrates that defendant approved and paid for six of Johnson's training requests in October 2000 and several of Johnson's other training requests between 1998 and 2002 at both the University of Maryland and Computer Consultants Corporation.  *See* AR 438-40, 448-61.  Specifically, the USDA paid for the following courses: Office Communications course in 1998, Information Systems for Managers course in 1999, Congress and the Legislative Process course in 1999, Intro to HTML course in 2000, Advanced HTML course in 2000, SOL 7.0 course in 2000, Java Scripting course in 2000, Crystal Reports course in 2000, Cold Fusion course in 2000, and Financial Decision Making for Managers course in 2002.  *Id.*  In response, plaintiff provides no evidence of any requests for training or tuition assistance that were denied.

related to the failure to grant timely promotions and the denial of training requests. *See Broderick v. Donaldson*, 437 F.3d 1226, 1232-33 (D.C. Cir. 2006) (affirming district court's grant of summary judgment on two of plaintiff's claims where the actions at issue occurred years before she contacted an EEO counselor).

Because the Court concludes that plaintiff clearly has not exhausted his administrative remedies with respect to his claims for (1) the failure to grant timely promotions from 1998 through 2001, and (2) the alleged denial of training requests, these claims cannot survive summary judgment. *See Barnabas*, 686 F. Supp. 2d at 102 & n.3; *More*, 480 F. Supp. 2d at 272-73.

On plaintiff's last claim, the alleged failure to grant his career-ladder promotion to GS-13, Johnson alleges that he was denied the promotion on September 23, 2002, and he "immediately initiated the informal complaint process required by his employment." Pl.'s Opp. 2.  In response, defendant argues that Johnson was aware that he was eligible for the promotion to GS-13 as of July 15, 2002, and thus that his initial contact with an EEO Counselor on September 23, 2002 was beyond the requisite 45 days in which Johnson must have contacted a counselor to have exhausted his administrative remedies. *See* Def.'s Reply Br. 3. The language of 29 C.F.R. § 1614.105(a)(1), however, states that a plaintiff must consult an EEO counselor "within 45 days of the

date of the matter alleged to be discriminatory or, in the case
of personnel action, within 45 days of the *effective date of the
action*."  29 C.F.R. § 1614.105(a)(1) (emphasis added).  Neither
party addresses whether the effective date of Johnson's
promotion to GS-13 would have been July 15, 2002 or September
23, 2002.  Given the limited facts provided, the Court cannot
conclude that defendant has met its burden of proving that
plaintiff failed to exhaust his administrative remedies as to
the USDA's failure to promote him to GS-13.  However, even
assuming, *arguendo*, that plaintiff had exhausted his remedies
with respect to this claim, he has not succeeded in rebutting
defendant's legitimate, non-discriminatory explanation for this
action, as discussed below.

**B.  Failure to Rebut Legitimate, Non-Discriminatory
    Explanations**

Defendant argues that it had legitimate, non-discriminatory
reasons for its actions, and that plaintiff has failed to show
that any of these reasons were a pretext for discrimination.
*See* Def.'s Reply Br. 7.  Because the Court concluded above that
plaintiff did not point to a single denial of training, the
Court analyzes below the remaining three claims: (1) the failure
to grant past promotions in a timely manner, (2) the failure to
promote Johnson to GS-13, and (3) the less than "Outstanding"
rating on his October 2002 performance evaluation.  On all of

these claims, the Court finds that plaintiff has failed to rebut defendant's proffered legitimate, non-discriminatory explanation for the challenged actions.

### 1.   Legal Standard for Discrimination Claims

The ADEA provides that, for all employees or applicants for employment who are at least 40 years of age, personnel actions "shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).  In cases alleging age discrimination, the court must analyze the ADEA claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (explaining that the *McDonnell Douglas* framework applies to ADEA claims); *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).  Under that framework, the initial burden rests on the plaintiff to establish a *prima facie* case of discrimination.  *See Barnette*, 453 F.3d at 515.  To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  *Id.* (citing *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-

19

discriminatory explanation for its actions.  *See Barnette*, 453
F.3d at 515-16.  In asserting a legitimate, non-discriminatory
explanation, an employer "need not persuade the court that it
was actually motivated by the proffered reasons.  It is
sufficient if the defendant's evidence raises a genuine issue of
fact as to whether it discriminated against the plaintiff."
*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)
(citation omitted).  After defendant has produced a legitimate,
non-discriminatory reason for the action, plaintiff bears the
burden of showing either that "the employer's reason is
pretextual or . . . that it was more likely than not that the
employer was motivated by discrimination."  *Forman v. Small*, 271
F.3d 285, 292 (D.C. Cir. 2001).

At the summary judgment stage, once the defendant offers a
legitimate, non-discriminatory reason for its actions, "the
question whether the employee actually made out a *prima facie*
case is no longer relevant."  *Brady v. Office of the Sergeant at
Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (internal citations
omitted).  In other words, once the defendant provides a
legitimate, non-discriminatory explanation, "the district court
need not--*and should not*--decide whether the plaintiff actually
made out a *prima facie* case under *McDonnell Douglas*."  *Id*. at
494.  Rather, the *McDonnell Douglas* burden-shifting framework
essentially disappears, and the sole inquiry becomes, whether

the plaintiff "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [his age]." *Id.* at 495; *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009).  Johnson therefore must be afforded the opportunity to prove by a preponderance of the evidence that defendant's proffered reasons were not its true reasons, but rather a "pretext for discrimination." *Barnette*, 453 F.3d at 516 (citation omitted).

### 2.   Application to Plaintiff's Claims

#### a.   Failure to Grant Past Promotions in a Timely Manner

Plaintiff alleges that defendant failed to grant him promotions on his dates of eligibility on two occasions in 1998 and 1999. *See* Compl. ¶ 8.[9]  In particular, Johnson was eligible for promotion to the GS-9 level on November 24, 1998, but was not promoted until December 6, 1998, and he was eligible for promotion to the GS-11 level on December 6, 1999, but he was not promoted until February 13, 2000. *Id.*  For those two

---

[9] Plaintiff also alleges that defendant failed to promote him to the GS-12 level in a timely manner on February 13, 2001, and instead promoted him on July 15, 2001. *See* Compl. ¶ 8.  As discussed below in Section III.B.2.b., defendant alleges that the reason for this delay was plaintiff's poor performance.

promotions, Johnson encountered delays of approximately two weeks and two months, respectively.  *See id.; see also* AR 427.

Even assuming that plaintiff has made out a *prima facie* case on this claim, defendant argues that its legitimate, non-discriminatory reasons for failing to grant timely promotions were administrative delays.  According to defendant, the USDA occasionally encountered administrative delays for promotions for its employees, and these delays would occur haphazardly and irrespective of an employee's age.  Def.'s Mem. 14.  The record reflects that, for the four Program Analysts employed in Johnson's division of OBPA during the relevant time period, all four of them experienced at least one administrative delay between 1998 and 2002.  *See* AR 427.  For example, Michael Poe, a Caucasian male born in 1964--thus not a member of a statutorily protected age group during the relevant time period--was promptly promoted in 1998, but encountered a four-month administrative delay before he was promoted in 1999.  Def.'s Mem. 14-15 (citing AR 427).  Julie Hetrick, a Caucasian female born in 1978--also not a member of a statutorily protected age group--encountered a two-week delay before being promoted in 2002.  *See* AR 427.  Finally, Maxine Wilson Matthews, an African-American female born in 1953--thus a member of a statutorily protected age group during the same time period--encountered a two-month administrative delay before she was promoted in 2000,

and a two-week delay before she was promoted in 2001, but she was promptly promoted in 2002.  *Id.*

The Court finds that defendant has offered a legitimate, non-discriminatory reason for the challenged actions.  As this Circuit has held, once the employer has articulated a non-discriminatory explanation for its actions, "the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers. . . . It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." *Fishbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (internal citations and quotation marks omitted); *see also George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005).

In response to defendant's motion, plaintiff has supplied the Court with nothing more than vague, conclusory allegations. In his Statement of Material Disputed Facts, plaintiff merely states that he "will testify under oath that these delays were not haphazardly handled but were handled purposefully by the Defendant.  Plaintiff believes that the Defendant was fully aware of the delays and willfully caused same to occur in the processing of the Plaintiff's promotions."  Pl.'s SMF ¶ 4. These assertions do not suffice to rebut defendant's legitimate, non-discriminatory explanation, not only because they are

23

unsupported by the evidence, but also because they fail to
assert that any action was taken based on plaintiff's age.
While the Court notes that the USDA's administrative delays are
unfortunate, the plaintiff has offered nothing to show that the
delays were a pretext for discrimination.  "[T]he question is
never whether the employer was mistaken . . . or downright
irrational in taking the action for the stated reason, but
simply whether the stated reason *was* his reason: not a good
reason, but the true reason." *Forrester v. Rauland-Borg Corp.*,
453 F.3d 416, 418 (7th Cir. 2006).  The Court finds that no
reasonable jury could conclude that defendant's stated reason
for the delays in promotions was instead pretextual.

> **b.   Delay in GS-12 Promotion, Failure to Promote
> to GS-13, and Less than "Outstanding"
> Performance Evaluation**

Plaintiff makes several more allegations of discriminatory
actions that occurred between February 2001 and October 2002.
First, plaintiff alleges that his promotion to GS-12 was delayed
approximately five months: he was eligible for promotion on
February 13, 2001, but he was not promoted until July 15, 2001.
Compl. ¶ 8.  In addition, plaintiff alleges that on July 15,
2002, he was eligible for promotion to the GS-13 level, but
despite meeting the eligibility requirements, he was denied the
promotion.  *Id.*  Finally, plaintiff alleges that for the rating
period from October 1, 2001 to September 30, 2002, he received a

performance rating of "Fully Successful," rather than

"Outstanding."[10]   *Id.* ¶ 21.

In response, defendant alleges that its legitimate, non-

discriminatory reasons for these actions were based on

plaintiff's poor performance.  Def.'s Mem. 15 (citing AR 428-37;

AR 72 ¶ 3).  According to defendant, although plaintiff was

date-eligible for a GS-12 promotion in February 2001, his first-

line supervisor, Geraldine Broadway, determined that Johnson was

not performance-eligible for the promotion due to his poor work

performance.  *See* Def.'s Mem. 15-16.  Ms. Broadway expressed

dissatisfaction with plaintiff's performance, both to Johnson

and to her supervisors within OBPA, at that time.  *Id.* (citing

AR 428-37).  In a memorandum to the Deputy Director of OBPA

dated March 9, 2001, Ms. Broadway noted:

> [Johnson's] performance at the GS-11 level has been
> unimpressive.  For example, in his major area of
> responsibility "legislative tracking" he does not
> follow-up with the agencies or reviewers to ensure

---

[10] Defendant assumes, *arguendo*, for purposes of its motion
for summary judgment that a "Fully Successful" rating, rather
than an "Outstanding" rating, constitutes an adverse employment
action, thus establishing a *prima facie* case of discrimination.
*See* Def.'s Mem. 15 n.1.  This Court need not determine whether a
less than "Outstanding" performance rating would meet the *prima
facie* requirements for an adverse employment action, however,
because Johnson has failed to present evidence from which a
reasonable fact-finder could infer that defendant's proffered
reason for evaluating Johnson less than "Outstanding" was
pretextual.  *See Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d
647, 653-54 (D.C. Cir. 2003) (not addressing whether plaintiff
met *prima facie* requirements where plaintiff could not rebut
legitimate non-discriminatory reason).

that legislative requests are being processed in a
timely manner, without constantly being asked to do
so. . . . [I]n addition to his failure to be
responsible for important activities in his major
areas of responsibility he has **failed to successfully
complete any special project given to him.** . . .
Finally, [Johnson] is constantly on the telephone or
socializing on personal matters although this has been
brought to his attention several times.

Def.'s Mem. 15-16 (citing AR 428-29 (emphasis in original)).

Ms. Broadway met with Johnson on February 23, 2001, explained to

him that she would not be recommending a promotion at that time,

and informed him of steps he needed to take in order to be

considered for a promotion.  *See* AR 429.  On March 15, 2001, Ms.

Broadway sent Johnson a letter, placing him on an informal PIP

and detailing the improvements needed in his current

performance.  *See* AR 433-35.  Defendant states that through the

informal PIP, Johnson improved his performance and eventually

received a promotion to GS-12 on July 15, 2001.  Def.'s Mem. 16

(citing AR 437).

However, according to defendant, after Johnson was promoted

to the GS-12 level, Ms. Broadway had renewed concerns about

Johnson's performance.  *See* Def.'s Mem. 16 (citing AR 59-69; AR

291-96).  In a witness statement prepared during the USDA's EEO

investigation, Ms. Broadway stated that Johnson was performing

"below satisfactory in at least one of his critical performance

elements," during the performance period ending October 2002.

Def's Mem. 16 (citing AR 60 ¶¶ 1-3).  In addition, Johnson rated

"satisfactory or below satisfactory in the 'most important critical element for a Program Analyst,' the critical element of Legislative Reports Tracking and Analysis." Def.'s Mem. 16 (quoting AR 60 ¶ 3). Ms. Broadway described Johnson's inaccurate and incomplete data entries, stating that he "continuously failed to provide the required summary information," despite her repeated instructions and reminders. Def.'s Mem. 16 (citing AR 61-62 ¶¶ 4-5). Ms. Broadway also asserted that Johnson was unable to lead legislative database user meetings, for which he was responsible, because plaintiff "was unprepared to answer the questions and concerns of database designers," and that Johnson's second-line supervisor, Jacquelyn Chandler, would have to take over the meetings in such instances. Def.'s Mem. 16 (citing AR 65 ¶ 13).

Ms. Chandler also described Johnson's performance as "sub-par" in her witness statement provided as part of the EEO investigation. Def.'s Mem. 17 (quoting AR 72 ¶ 5). Ms. Chandler stated that she convinced Ms. Broadway to give Johnson a "Fully Successful" rating on his October 2002 performance evaluation, rather than an "Unacceptable" rating, despite his poor performance, because she hoped that the higher rating would give Johnson an incentive to perform better. *See* AR 72 ¶ 5. Ms. Chandler further asserted that she "witnessed [] first hand" that during the weekly meetings that Johnson was required to

lead, "[o]ften, he did not understand the questions and issues on the table and he was not able to address the questions or concerns.  The majority of the time I had to take over and lead the meetings because from week to week he did not engage in the necessary preparation to lead the meetings."  AR 74 ¶ 8. Finally, Ms. Chandler stated that Johnson's "performance deteriorated to the point where it was necessary to place him on an official PIP."  AR 72-73 ¶ 5.

The Court finds that defendant has produced legitimate, non-discriminatory reasons for the challenged actions.  See *Paquin v. Fed. Nat'l Mortg. Ass'n*, 119 F.3d 23, 29-30 (D.C. Cir. 1997); *see also Dews-Miller v. Clinton*, 707 F. Supp. 2d 28, 52 (D.D.C. 2010) (defendant's assertion that it gave plaintiff two "minimally successful" performance ratings because her supervisors were dissatisfied with her work constituted a legitimate, non-discriminatory reason).  At least some of the evidence relied on by defendant was contemporaneous documentation of plaintiff's performance issues, and plaintiff was notified of the issues with his performance at the time they arose.  Accordingly, plaintiff now bears the burden of showing that "the employer's reason is pretextual."  *Forman*, 271 F.3d at 292.

Johnson has wholly failed to do so.  In his opposition, Johnson has not made a single allegation that the challenged

actions were a pretext for discrimination.  Indeed, in his

opposition brief, plaintiff does not address defendant's

arguments on the merits *whatsoever*, instead solely raising

arguments as to the exhaustion issues discussed above.[11]  In his

Statement of Material Disputed Facts,[12] Johnson makes only one

conclusory statement: "Plaintiff became the target of a vendetta

by Ms. Broadway in early to mid 2002."  Pl.'s SMF ¶ 7.  Johnson

---

[11] "It is well understood in this Circuit that when a
plaintiff files an opposition to a motion . . . addressing only
certain arguments raised by the defendant, a court may treat
those arguments that the plaintiff failed to address as
conceded." *Howard v. Locke*, 729 F. Supp. 2d 85, 87 (D.D.C.
2010) (internal quotations omitted).  Although the Court could
treat defendant's arguments on the merits as conceded, the Court
finds that even construing all of the allegations in plaintiff's
Complaint and Statement of Material Disputed Facts in the light
most favorable to him, Johnson's claims cannot survive summary
judgment.

[12] While plaintiff provides a limited number of record
citations in his Statement of Material Disputed Facts, he
overwhelmingly fails to include references to the parts of the
record relied on to support his statements, as required by the
Local Rules of this Court.  *See* LCvR 7(h)(2) ("[In] cases in
which judicial review is based solely on the administrative
record . . . motions for summary judgment and oppositions
thereto shall include a statement of facts with references to
the administrative record.").  The burden is on the parties, not
the Court, to "identify the pertinent parts of the record, to
isolate the facts that are deemed to be material, and to
distinguish those facts which are disputed from those that are
undisputed." *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir.
1988), *cert. denied sub nom. Twist v. Thornburgh*, 490 U.S. 1066
(1989); *see also Jackson v. Finnegan, Henderson, Farabow,
Garrett, & Dunner*, 101 F.3d 145, 153-54 (D.C. Cir. 1996) (noting
that a district court "is under no obligation to sift through
the record . . . in order to evaluate the merits of [a] party's
case," and the burden is on counsel, not the court, to "winnow
the wheat from the chaff").

does not expand upon this statement--he has not alleged anything
further with respect to the purported "vendetta" against him,
nor has he argued that any other employees were treated
differently by Ms. Broadway.  In addition, Johnson has presented
no evidence of discriminatory animus by Ms. Broadway, Ms.
Chandler, or anyone else at the USDA, and he has failed to point
to any other evidence that discredits the underlying reasons
provided by defendant for the failure to promote Johnson or rate
him "Outstanding."[13]  Johnson's allegations are insufficient to
satisfy his burden of showing that defendant's stated reasons
were a pretext for discrimination.  *See Hussain v. Nicholson*,
435 F.3d 359, 365 (D.C. Cir. 2006) (concluding that the district
court properly disregarded conclusory allegations of
discriminatory animus); *Robinson v. Duncan*, 775 F. Supp. 2d 143,
153-54 (D.D.C. 2011) (granting defendant's motion for summary
judgment where plaintiff "presented nothing aside from
conclusory allegations from which a reasonable jury could infer
that [the decision-maker] acted with discriminatory . . .

---

[13] Johnson also states, "Plaintiff contends and will testify
at trial that in fact the performance evaluation of October 2002
should have been 'outstanding.'"  Pl.'s SMF ¶ 9.  However,
plaintiff's subjective assessment of his own performance is
insufficient to establish pretext.  *See Waterhouse v. Dist. of
Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (plaintiff "cannot
establish pretext simply based on her own subjective assessment
of her own performance"), *abrogated on other grounds by Mastro
v. Potomac Electric Power Co.*, 447 F.3d 843, 851 (D.C. Cir.
2006); *see also Dorns v. Geithner*, 692 F. Supp. 2d 119, 135
(D.D.C. 2010).

animus"); *Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999) ("In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record."). Moreover, Johnson nowhere asserts that any of the allegedly discriminatory actions were taken on the basis of his age. The Court concludes that Johnson has not made any arguments from which a reasonable jury could find that defendant's stated reasons were pretextual, nor that defendant discriminated against him based on his age.

Accordingly, and having considered the allegations in the complaint, plaintiff's opposition to the motion for summary judgment, and the evidence upon which plaintiff has relied, the Court concludes that Johnson's claim of discrimination under the ADEA cannot survive summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

Signed:    **EMMET G. SULLIVAN**
           **United States District Judge**
           **September 30, 2011**